**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION**

COSBY SIRINGI, individually and on
behalf of all others similarly situated,

§
§
§

        Plaintiff,

§
§

v.

§
§

   C.A. No. 4:25-CV-04266-ASH-DHP

CRUST PIZZA CO.,

§
§
§

        Defendant.

§
§

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................. 2

LEGAL STANDARD FOR A MOTION TO DISMISS......................................... 3

ARGUMENT ...................................................................................................... 3

    I.    Count I Should be Dismissed as TCPA Section 227(c) Does Not Apply to Text Messages or to Cellular Phones.......................................................... 3

        A.    TCPA Section 227(c) does not prohibit sending text messages ............... 3

        B.    TCPA Section 227(c) only applies to residential landlines, not cellular phones ........................................................................................ 5

        C.    This Court is not bound by the FCC's interpretation of the TCPA .......... 7

        D.    The FCC has not enacted a regulation applying Section 227(c) to text messages .......................................................................................... 9

    II.    Count III (TCPA Section 227(b)) must be dismissed for failure to plausibly allege Crust used an "Automatic Telephone Dialing System" ............ 10

    III.    Counts II and IV must be dismissed for the reasons already stated..................... 12

    IV.    Conclusion ........................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Davis v. CVS Pharmacy, Inc.*,
  Case No. 4:234-cv-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)................................5, 8

*El Sayed v. Naturopathica Holistic Health, Inc.*,
  No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ......................8

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021)................................................................................................................6, 11

*Freidman v. Massage Envy Franchising, LCC*,
  No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. Jun. 13, 2013)............................12

*Gager v. Dell Fin. Services, LLC*,
  727 F.3d 265 (3d Cir. 2013)..................................................................................................8, 9

*Hernandez v. Causey*,
  124 F.4th 325 (5th Cir. 2024) ...................................................................................................3

*Hunsinger v. Dynata LLC*,
  No. 3:22-cv-00136-G-BT, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023)................................11

*Jones v. Blackstone Med. Servs., LLC*,
  No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764 (C.D. Ill. July 21, 2025) .................4, 5, 8

*Joseph v. ARS Nat'l Servs., Inc.*,
  No. 1:13-cv-04123-JEC-RGV, 2014 WL 12774686 (N.D. Ga. Feb. 21, 2014) ......................12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025)............................................................................................................7, 8, 9

*Nielsen v. Preap*,
  586 U.S. 392 (2019)....................................................................................................................4

*Ramming v. U.S.*,
  281 F.3d 158 (5th Cir. 2001) .....................................................................................................3

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
  18 F.C.C. Rcd. 14014 (2003)......................................................................................................7

*Samataro v. Keller Williams Realty, Inc.*,
  No. 1:21-cv-76-RP, 2021 WL 4927422 (W.D. Tex. Sept. 27, 2021)......................................11

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ........................................................8, 9

*Seago v. O'Malley*,
    91 F.4th 386 (5th Cir. 2024) ...........................................................3

*Suttles v. Facebook, Inc.*,
    461 F. Supp. 3d 479 (W.D. Tex. 2020)...........................................12

*Watts v. Emergency Twenty Four, Inc.*,
    No. 20-cv-1820, 2021 WL 2529613 (N.D. Ill. Jun. 21, 2022) ...............12

**Statutes**

47 U.S.C. § 227(b) ............................................................... *passim*

47 U.S.C. §227(c)(1).................................................................6

47 U.S.C. §227(c)(2).................................................................6

47 U.S.C. § 227(c)(3)................................................................7

47 U.S.C. § 227(c)(5).........................................................3, 4, 7, 8

47 U.S.C. § 227(e)(8)................................................................5

Consolidated Appropriations Act, 2018, Pub. L. No. 115–41, s 503, 132 Stat. 348,
    1091–92 (2018), amending 47 U.S.C. 227(e)(8)(A)–(E)........................4

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence
    Act, PL 116-105, December 30, 2019, 133 Stat 3274 .........................5

Texas Business & Commerce Code § 305.053.................................1, 2, 13

**Other Authorities**

47 C.F.R. § 64.1200(a)...........................................................9, 10

47 C.F.R. §§ 64.1200(c)..........................................................9, 10

47 C.F.R. § 64.1200(d) ............................................................1, 9

47 C.F.R. 64.1200(e)..............................................................7, 9

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
    Texts* ...........................................................................10

Fed. R. Civ. P. 12(b)(6)........................................................1, 2, 12

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Crust Bros, LLC[1] ("Crust"), by and through undersigned counsel, respectfully files this motion to dismiss the Complaint (ECF No. 1) filed by Plaintiff Cosby Siringi.

## INTRODUCTION

Plaintiff filed this putative class action in September 2025 after he allegedly received unwanted text messages promotions over one year prior to the cell phone number that he had previously provided to Crust. Plaintiff's Complaint should be dismissed because it fails to state causes of action under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and 47 C.F.R. § 64.1200 (Counts I and III) and the state Texas Business & Commerce Code § 305.053 ("TBCC") (Counts II and IV).

Count I, asserting a claim under TCPA Section 227(c), fails because his claims are outside the scope of the statute. The TCPA was enacted before text messages existed, and the plain language of Section 227(c) applies only to telephone *calls*, not to *text messages*. No calls are alleged here. In June 2025, the Supreme Court held that courts should interpret statutes without deference to the FCC's prior interpretation of the TCPA and case law relying on it, and since then at least three courts have held that text messages are outside the scope of Section 227(c). Even if Section 227(c) applied to text messages, it (as well as the do-not-call regulation on which Plaintiff expressly relies, 47 C.F.R. § 64.1200(d)), unambiguously applies only to telephone calls to *residential telephone subscribers* and does not apply on its face to text messages sent to *cell phones*.

Count III, asserting a claim TCPA Section 227(b), fails to plausibly allege that Crust used a "random or sequential number generator" as part of a "automatic telephone dialing system"

---

[1] The Complaint erroneously identifies Defendant as Crust Pizza Co.

("ATDS") to locate and text Plaintiff. As conceded in the Complaint, Plaintiff consented to receive text messages from Crust, and the messages were sent to the cellphone number he voluntarily provided to Crust, not a randomly or sequentially generated number (*e.g.*, random strings of ten digits or sequentially (*e.g.*, 305-555-0001, 305-555-0002, and so on)).

Having failed to allege federal claims under Counts I and III, Plaintiff also fails to allege state claims under the TBCC (Counts II and IV). Section 305.053 of the TBCC merely provides a state law remedy for violation of the TCPA. The failure to state a TCPA claim will necessarily result in the failure to state a claim under the TBCC.

For all of these reasons, and as further explained below, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff does not allege that Crust ever called him. Rather, according to the allegations in the Complaint,[2] Plaintiff received a "telemarketing text message" on his cellphone. Compl. ¶ 29. Plaintiff does not deny that he consented to receiving text messages from Crust. Instead, Plaintiff concedes that he consented, alleging only that "that consent was expressly revoked." *Id.* ¶¶ 26, 29 38.[3] On or about July 10, 2024, Plaintiff responded to a text message with the word "stop" and received confirmation that he was unsubscribed from promotional messages. *Id.* ¶ 29. Plaintiff alleges he received another text seven days later, and received four additional marketing messages in all. *Id.* ¶¶ 30–33, 38–39. Plaintiff alleges that he sent a second "stop" message on July 31, 2024. *Id.* ¶ 33. Over a year later, his counsel filed the class action complaint (ECF No. 1).

---

[2] Solely for purposes of Fed. R. Civ. P. 12(b)(6) and this motion, Crust assumes the truth of well-pleaded facts and inferences contained in Plaintiff's Complaint.
[3] Should the case proceed, Crust will demonstrate that Plaintiff did in fact provide prior consent to receive promotional text messages.

## LEGAL STANDARD FOR A MOTION TO DISMISS

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The determinative issue on a motion to dismiss is whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, the Complaint is legally insufficient, states no plausible claim for relief, and should be dismissed.

## ARGUMENT

**I.    Count I Should be Dismissed as TCPA Section 227(c) Does Not Apply to Text Messages or to Cellular Phones**

Plaintiff alleges that Crust violated TCPA Section 227(c)(5) by sending unwanted text messages to his cellphone after he had previously consented. Compl. ¶¶ 26–34, 38–39. However, on its face, that subsection of the TCPA applies only to *telephone calls*, not to *text messages*. Nor does Section 227(c)(5) apply to *cellular telephones,* but instead only to *residential landlines*. Neither phone calls nor residential landlines are alleged here.

### A.    TCPA Section 227(c) does not prohibit sending text messages

The TCPA was enacted in 1991 before text messages existed, and Section 227(c) makes no mention of text messages. When interpreting a statute, courts begin with the plain text. *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024). The language of Section 227(c) unambiguously applies only to telephone calls, not text messages. Section 227(c) creates a private right of action only when a person "has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added).

The meaning of "telephone call" cannot be stretched to encompass the entirely different process of text messaging. Section 227(c)(5) explicitly refers to a "telephone call," which can and should be interpreted as it is commonly understood: distinct from a SMS (text) message. *See Nielsen v. Preap*, 586 U.S. 392, 407–08 (2019) ("Because words are to be given the meaning that proper grammar and usage would assign them, the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose.") (cleaned up). "Text messaging was not an available technology in 1991, when the TCPA was enacted and thus 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025) (citing Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992, was a cheerful, if early, holiday greeting: 'Merry Christmas,' it read, short and sweet.")).

Congress also reaffirmed that Section 227(c) only relates to telephone calls, not text messages, because it has twice amended other provisions of the TCPA to explicitly reference text messages but chose not to amend 227(c) for those purposes.

In 2018, Congress amended other portions of the TCPA to explicitly define "text message" and "SMS"[4] but did not extend those definitions to 227(c). Instead, Congress amended Section 227(e), titled "Prohibition on provision of misleading or inaccurate caller identification information," to explicitly refer to text messages. Section 227(e)(1) now provides: "It shall be unlawful for any person [] in connection with any voice service or *text messaging service*, to cause

---

[4] Consolidated Appropriations Act, 2018, Pub. L. No. 115–41, s 503, 132 Stat. 348, 1091–92 (2018), amending 47 U.S.C. 227(e)(8)(A)–(E).

any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." (emphasis added). The definitions in 227(e) are solely "[f]or purposes of this subsection," *i.e.* Section 227(e). 47 U.S.C. 227(e)(8). In addition to explicitly being confined to Section 227(e), the words "text messaging service" do not appear in Section 227(c).

Similarly, in 2019, Congress enacted the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, PL 116-105, December 30, 2019, 133 Stat 3274 (the "TRACED" Act). The TRACED Act incorporated the definition of text message from 227(e)(8) that had been created in 2018 (discussed above), into 227(i). While 227(i) can be read as recognizing that 227(b) can regulate text messages, there is nothing in the TCPA—including the amendments in 2018 and 2019—that extends 227(c) to texts. 227(c) does not cross-reference 227(i), 227(b), or 227(e)(8). Congress easily could have extended Section 227(c) to text messages. It chose not to. "It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Blackstone*, 2025 WL 2042764 at *5. Unless and until Congress decides to incorporate text messaging into Section 227(c), litigants are bound to the existing language, and the Complaint must be dismissed on this basis. *See also Davis v. CVS Pharmacy, Inc.*, Case No. 4:234-cv-477, 2025 WL 2491195, *3 (N.D. Fla. Aug. 26, 2025).

**B.    TCPA Section 227(c) only applies to residential landlines, not cellular phones**

Count I should also be dismissed for the independent reason that the Complaint does not plausibly allege that Plaintiff is a "residential telephone subscriber" as required by Section 227(c), instead only alleging contact with his cellular phone. The Supreme Court has recognized the statutory distinction between residential phones and cellphones, including under the TCPA. *See*

*Facebook, Inc. v. Duguid*, 592 U.S. 395, 407 (2021) (clarifying that the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' to various type of phone lines, including home phones and cell phones," and treats residential phone lines as distinct from cellular phone lines).

Section 227(c) does not include reference to cellular phones and instead, instructs the FCC to adopt rules to protect "residential telephone subscribers":

> [T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights . . .

47 U.S.C. §227(c)(1); *see also* 47 U.S.C. §227(c)(2) ("[T]he Commission shall conclude the rulemaking proceeding initiated under paragraph [(c)](1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph. . ."). Because the "regulations prescribed under this subsection" refer explicitly to "protect[ing] residential telephone subscribers' privacy rights," Plaintiff's claims cannot proceed as a matter of law unless he is a "residential telephone subscriber."

Congress' intent to limit Section 227(c) to residential landlines and not to cell phones is confirmed by reviewing Section 227(b) which explicitly includes "cellular telephone[s]" within its scope.  227(b) applies, inter alia, to calls "to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." (emphasis added). On the other hand, Section 227(c) directs the FCC to enact regulations that "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and to limit calls to such subscribers. 47 U.S.C. § 227(c)(3). The use of different terms in 227(b) and (c) is consistent with Congressional intent. As a matter of public policy, "Congress found that automated or prerecorded telephone calls

[regulated under Section 227(b)] were a greater nuisance and invasion of privacy than live solicitation calls [regulated by Section 227(c)]." 2003 Order, *infra* n.2, at ¶ 165.

### C.     This Court is not bound by the FCC's interpretation of the TCPA

Plaintiff may argue that the FCC's prior interpretation that a text message is a "telephone call" controls here, but that is not entitled to any deference after the Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 160–61 (2025). For the same reason, pre-*McLaughlin* case law relying on the FCC's interpretation is no longer good law. Rather, the Court must independently assess the intention of Congress in enacting Section 227(c)(5), *McLaughlin*, 606 U.S. at 168, which for the reasons discussed above demonstrates that Count I should be dismissed.

In 2003, the FCC paraphrased Section 227(b) by stating that "under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, at 165 (2003) (the "2003 Order") (citing 47 U.S.C. § 227(b)(1)). The FCC then improperly expanded the scope of the TCPA, without any citations or analysis, by stating that "[t]his encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." *Id.* Later, the FCC adopted 47 C.F.R. 64.1200(e), which states that the rules set forth in "paragraph (c) and (d) of [Section 227] are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the [2003 Order]."

The 2003 Order is not entitled to any deference after the Supreme Court's June 2025 decision in *McLaughlin*, expressly holding that Courts *are not required* to defer to the FCC's

interpretation of the TCPA. Thus, following *McLaughlin*, this Court must independently—and without deference to the FCC's decision—evaluate whether text messages sent to cellphone numbers are within the scope of Section 227(c), despite that section's reference only to telephone calls made to residential telephone subscribers and Congress' other amendments to the TCPA. *See e.g. Blackstone*, 2025 WL 2042764, at *4–5. For the reasons discussed above, and based on the plain language and logical reading, this Court should reject any argument that Section 227(c) applies to text messages or cellular phones, and dismiss Count I as deficient as a matter of law.

At least three District Courts have since relied upon *McLaughlin* to rule that because deference is not afforded to an agency regulation, the plain language of the statute controls, and Section 227(c) does not apply to text messages. *See Blackstone*, 2025 WL 2042764, at *4 ("Text messaging was not an available technology in 1991, and thus 'telephone call' [in Section 227(c)] would not have included text messages or SMS messages."); *Davis*, 2025 WL 2491195, *4 ("To succeed on his [TCPA] § 227(c)(5) [claim], [plaintiff] had to allege that he received at least two 'telephone calls.' He alleged receiving only text messages. And because text messages are not telephone calls, he has not stated a claim."); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (agreeing with and adopting the holding in *Davis* that "the statutory text here is clear, and a text message is not a 'telephone call'").

Plaintiff has pointed to *Gager v. Dell Fin. Services, LLC*, 727 F.3d 265, 269 (3d Cir. 2013) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) for the authority that "[u]nder FCC guidance and well-settled case law, text messages constitute 'calls' within the meaning of the TCPA." Compl. ¶ 42. For one, the question in *Gager* was not the applicability of Section 227(c) to text messages, but whether the plaintiff could revoke her consent once it was

given. It does not stand for the proposition for which Plaintiff cites it. For another, both *Gager* and *Satterfield* pre-date the Supreme Court's decision in *McLaughlin*. *Satterfield* relies on the FCC's 2003 Order and its progeny, and as such, it is no longer good law.

> **D.    The FCC has not enacted a regulation applying Section 227(c) to text messages**

Even if this Court were required to defer to the FCC's interpretation of the TCPA (it is not), the FCC's own pronouncements make clear that, to the extent the TCPA and its regulations apply to text messages, text messages are governed only by Section 227(b), not 227(c).  Section 64.1200(e) purports to apply 227(c) and (d) to text messages to "the extent described in [the 2003 Order].'" As noted above, the 2003 Order only addressed text messages sent using "an automatic telephone dialing system or an artificial or prerecorded message"—a practice regulated by Section 227(b), not Section 227(c). *Id.* ¶ 165. In fact, that paragraph cites only to Section 227(b) of the TCPA and Section 64.1200(a) of the regulations—**not Sections 227(c), 64.1200(c), or (d).** *Id.* Thus, the 2003 Order cannot be relied upon to support a finding that text messages are regulated by Sections 227(c), 64.1200(c), or (d).

Notably, the phrases "text message" and "SMS message" are wholly absent from the regulations implementing Section 227(c)—regulations Sections 64.1200(c) and (d). Rather, the regulations use the terms "telephone call," "artificial or prerecorded-voice telephone call," and "call." 47 C.F.R. §§ 64.1200(c), (d). The FCC could have included the term "text message" or "SMS message" in these provisions, but chose not to do so.

Elsewhere in the regulations, the FCC clearly indicated its intent to regulate text messages under Section 227(b) (as opposed to Section 227(c)), writing:

> As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call.

47 C.F.R. § 64.1200(a)(9). Importantly, Section 64.1200(a) was implemented under Section 227(b) only, and *not* Section 227(c). Thus, by limiting this definition to Section 64.1200(a), the FCC clearly indicated that, unless otherwise specified, a "call" does not include a "text message" or "SMS message." If "call" did generally include text messages or SMS messages, the FCC would have no reason to include a definition of "call" in this circumstance—it would have no effect. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, THOMPSON/WEST (1st ed 2012), at 174 ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*).").

Clearly, the FCC could have included "text message" or "SMS message" within the definition of a "call" in other sections as it did in Section 64.1200(a)(9) implementing 227(b), but chose not to do so. The FCC intentionally omitted text messages or SMS messages from its regulations within Section 64.1200(c) and (d) (implementing 227(c)). Section 227(c), therefore, does not regulate text messages or SMS messages.

## II. Count III (TCPA Section 227(b)) must be dismissed for failure to plausibly allege Crust used an "Automatic Telephone Dialing System"

Count III, asserting a claim under TCPA Section 227(b), fails to plausibly allege that Crust used a "random or sequential number generator" as part of a "automatic telephone dialing system" ("ATDS") to locate and text Plaintiff. As conceded in the Complaint, Plaintiff consented to receive text messages from Crust, and the messages were sent to the cellphone number he voluntarily provided to Crust, not a randomly or sequentially generated number.

Section 227(b) of the TCPA regulates the use of an "automatic telephone dialing system" to place calls to phone numbers assigned to a cellular telephone service. ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.SC. § 227(a)(1).

The Supreme Court in *Duguid* ruled that "Congress' definition of an autodialer[5] requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator," 592 U.S. at 397, *i.e.* if it generates phone numbers to be called randomly (*e.g.*, random strings of ten digits) or sequentially (*e.g.*, 305-555-0001, 305-555-0002, and so on).[6] The Supreme Court also clarified that this definition cannot be stretched to include "any equipment that merely stores and dials telephone numbers." *Id.* at 396. Therefore, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 405. This definition necessarily excludes equipment that does not use a "random or sequential number generator" to store or produce numbers, such as automated systems that make calls to specific individuals "whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer." *Samataro v. Keller Williams Realty, Inc.*, No. 1:21-cv-76-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) (dismissing claims relating to the use of an ATDS with prejudice post-*Duguid*.).

"A bare allegation of the usage of an ATDS, 'without more, is insufficient to sustain a TCPA claim.'" *Hunsinger v. Dynata LLC*, No. 3:22-cv-00136-G-BT, 2023 WL 2377481, at *7 (N.D. Tex. Feb. 7, 2023) (citing *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-

---

[5] "Autodialer" is not synonymous with ATDS. The Supreme Court's use of "autodialer" as shorthand for "automated telephone dialing system" in *Duguid* does not mean that *any* "autodialer," as more colloquially used, is necessarily an ATDS under the TCPA. However, the use of "autodialer" within the *Duguid* decision should be treated as synonymous with ATDS under the TCPA for purposes of the analysis within the *Duguid* decision.

[6] This practice was common at the time the TCPA was enacted in 1991 but the Supreme Court has recognized it is not widely used anymore. The Supreme Court observed in 2001 that while this technology may be "senescent," the text of the TCPA cannot be stretched to apply to more modern calling technology such as calling stored lists of known phone numbers. *Duguid*, 592 U.S. at 397.

M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017)). To sufficiently plead the ATDS element of his claim, Plaintiff "must provide at least enough facts to make a plausible inference that [the defendant] used an ATDS to survive dismissal." *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020).

The Complaint here does nothing more and to the contrary, it concedes that Crust sent a text message to the phone number he provided, not a randomly or sequentially generated number, negating Count III. Compl. ¶ 26.   Where a plaintiff "has alleged no facts establishing the technological capabilities of the device used by [the defendant] to place calls to [her] cellular phone, the Court cannot draw a reasonable inference that the device was an ATDS." *Joseph v. ARS Nat'l Servs., Inc.*, No. 1:13-cv-04123-JEC-RGV, 2014 WL 12774686, at *5 (N.D. Ga. Feb. 21, 2014); *see Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *3–5 (N.D. Ill. Jun. 21, 2022) (dismissing claim relating to the use of an ATDS as insufficiently pleaded where plaintiff asserted that the defendant's dialing equipment was capable of calling thousands of individuals a day, stored numbers of individuals who did not consent to be called, and called plaintiff and others continuously at all hours); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *2–3 (S.D. Cal. Jun. 13, 2013) (finding that plaintiffs' allegations were insufficient to establish use of an ATDS because it was "just as conceivable that [they] were done…not using an ATDS").

As the only plausible inference from Plaintiff's experience and bare allegations is that Crust sent text messages to a list of known phone numbers (including Plaintiff's own), not random ones, Count III should be dismissed.

## III.    Counts II and IV must be dismissed for the reasons already stated

Plaintiff's state law claims should be dismissed under FRCP 12(b)(6) as they too fail to state a cause of action. Plaintiff's claims under Section 305.053 of the Texas Business &

Commerce Code fail because the TBCC merely incorporates the TCPA and provides a state remedy for violation of the federal statute. For the reasons already stated herein (*supra* Sections I and II), Plaintiff has failed to state a claim under the TCPA. Therefore, Plaintiff cannot state a claim under the TBCC.

## IV.    Conclusion

The Court should dismiss the Complaint with prejudice and grant such other and further relief as the Court deems proper.

Dated: October 29, 2025                    Respectfully submitted,

**K&L GATES LLP**

*s/ Joseph C. Wylie II*

Joseph C. Wylie II *(Pro Hac Vice Pending)*
Attorney-in-Charge
Molly G. Baldock *(Pro Hac Vice Pending)*
Illinois Bar Nos. 6270852 and 6348824
70 W. Madison St., Suite 3100
Chicago, IL 60602
(312) 372-1121
joseph.wylie@klgates.com
molly.baldock@klgates.com

Henry M. Pogorzelski
Texas Bar No. 24007852
Southern District of Texas Bar No. 25382
609 Main St., Suite 4150
Houston, Texas 77002
(713) 815-7300
henry.pogorzelski@klgates.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, a true and correct copy of the above and foregoing document has been served electronically using the CM/ECF system, which will subsequently send copies to all counsel of record who are registered to accept electronic service in this matter.

*s/ Henry M. Pogorzelski*
Henry M. Pogorzelski