**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **COSBY SIRINGI,** ***individually and on behalf of all others similarly situated,*** <br><br> **Plaintiff,** <br><br> **-v-** <br><br> **CRUST PIZZA CO.,** <br><br> **Defendant.** | **Civil Case Number:** <br> **4:25-cv-04266** <br><br> **ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone: (732) 695-3282**
**Fax: (732) 298-6256**
***Attorney for the Plaintiff***
***Cosby Siringi***

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT……………….…...…………..……..…..…………………....1**

**ARGUMENT………….............................................................................................................4**

**A. Text Messages Are "Calls" Under the TCPA, As The Overwhelming Weight Of Authority Has Held...…......…………………………………4**

**a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages……………………......7**

**b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated……………..………………………………..…8**

**B. Plaintiff Alleged Receipt Of The Illegal Messages On His Cell Phone, Which He Received As A Residential Telephone Subscriber….......................16**

**TABLE OF AUTHORITIES**

*Alvarez v. Fiesta Nissan, Inc.*,
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026)……………………………3, 11

*Ammons v. Ally Fin., Inc.*,
305 F. Supp. 3d 818 (M.D. Tenn. 2018)……………………………………………19

*Arredondo v. Flexi Corp.*,
2017 U.S. Dist. LEXIS 220710 (S.D. Tex. Aug. 18, 2017)……………………….……5

*Barr v. American Ass'n of Political Consultants, Inc.*,
140 S.Ct. 2335 (2020)…………………………………………………………...5

*Barton v. Temescal Wellness, LLC*,
525 F. Supp. 3d 195 (D. Mass. 2021)……………………………………………5

*Bostock v. Clayton Cnty.*,
590 U.S. 644, 140 S. Ct. 1731 (2020)……………………………………………12

*Breda v. Cellco Partnership*,
934 F.3d 1 (1st Cir. 2019)………………………………………...….…5, 14

*Bruce Katz, M.D., P.C. v. Focus Forward, LLC*,
22 F.4th 368 (2d Cir. 2022)……………………………………………………14

*Butler v. Tex. Card House, LLC,*
2025 U.S. Dist. LEXIS 47774 (W.D. Tex. Mar. 17, 2025)…………………...17, 20

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024)…………………………………………...1

*Callier v. Nat'l United Grp., LLC*,
2021 U.S. Dist. LEXIS 223278 (W.D. Tex. Nov. 17, 2021)……………………….4

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)…………………………………………………………….4

*Commodity Futures Trading Com v. Schor*,
478 U.S. 833 (1986)…………………………………………………………….6

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021)…………………………………………...2, 14

*Davis v. CVS Pharmacy, Inc.*,
2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025)……………………...5

*Davis v. HSBC Bank Nevada, N.A.*,

691 F.3d 1152 (9th Cir. 2012)……………………………………………………...8

*Dominguez v. Yahoo, Inc.*,

894 F.3d 116 (3d Cir. 2018)……………………………………….......................14

*Drazen v. Pinto*,

74 F.4th 1336 (11th Cir. 2023)………………………………………………….....14

*Esquivel v. Mona Lee, Inc.*,

2025 U.S. Dist. LEXIS 230841 (S.D. Cal. Nov. 24, 2025)……………......................3, 16

*Ferrell v. Colourpop Cosmetics, LLC*,

2025 U.S. Dist. LEXIS 140893 (C.D. Cal. July 22, 2025)…………………………..…20

*Forest Grove Sch. Dist. v. T.A.*,

557 U.S. 230 (2009)……………………………………………………………………6

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,

484 U.S. 49, 108 S. Ct. 376 (1987)…………………………………………………….12

*Harriel v. Bealls, Inc.*,

2025 U.S. Dist. LEXIS 158157 (M.D. Fla. Aug. 15, 2025)…………………………..16, 20

*Hodgin v. Parker Waichman LLP,*

2015 WL 13022289 (W.D. Ky. Sept. 30, 2015)………………………………………17

*Howard v. Republican Nat'l Comm.,*

164 F.4th 1119 (9th Cir. 2026)……………………………………………………..5

*Hulce v. Zipongo, Inc.*,

132 F.4th 493 (7th Cir. 2025)………………………………………………………8

*Hunsinger v. Buyers,*

2022 U.S. Dist. LEXIS 32319 (N.D. Tex. Feb. 24, 2022)……………………….……4

*IBP, Inc. v. Alvarez*,

546 U.S. 21, 126 S. Ct. 514 (2005)……………………………….………………14

*Ins. Mktg. Coal. Ltd. v. FCC*,

127 F.4th 303 (11th Cir. 2025)……………………………………………….……..5

*Isaacs v. USHEALTH Advisors, LLC*,

2025 U.S. Dist. LEXIS 152625 (N.D. Ga. Aug. 7, 2025)……………………………..7, 18

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015)……..8

*King v. Burwell*,
576 U.S. 473, 135 S. Ct. 2480 (2015)……13-14

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019)……...9

*Lobbins v. United States*,
900 F.3d 799 (6th Cir. 2018)……...17

*Loudermilk v. Maelys Cosmetics USA, Inc.*,
2025 U.S. Dist. LEXIS 256097 (N.D. Ga. Dec. 10, 2025)……......19

*McGonigle v. Shopperschoice.com*,
2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026)……3, 11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)……..1, 4

*Mey v. Liberty Home Guard*,
2026 U.S. Dist. LEXIS 739 (N.D.W. Va. Jan. 5, 2026)……3

*Mujahid v. Newity, LLC*,
2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025)……3, 12, 16

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019)……...10

*Newell v. Child.'s Dental Health Assocs.*,
2026 U.S. Dist. LEXIS 74360 (E.D. Pa. Apr. 6, 2026)……3, 6, 7

*NUCA v. First Nat'l Bank & Trust Co.*,
522 U.S. 479 (1998)……...17

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
950 F.3d 959 (7th Cir. 2020)……...19

*Rubin v. Staples*,
2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026)…….3

*Sagar v. Kelly Auto. Grp., Inc.*,
2021 U.S. Dist. LEXIS 227781 (D. Mass. Nov. 29, 2021)……20

*Salaiz v. VSC Operations LLC*,

2024 U.S. Dist. LEXIS 121927 (W.D. Tex. July 10, 2024)……………….....................17

*Satterfield v. Simon & Schuster, Inc.*,

569 F.3d 946, 952 (9th Cir. 2009)……………………………………………..…..5, 7-9, 14

*Territory of Guam v. United States*,

593 U.S. 310, 141 S. Ct. 1608 (2021)……………………………………….…………13

*United States v. Davies*,

139 S. Ct. 2319 (2019)…………………………………………………………….……...17

*United States v. Paulson*,

68 F.4th 528 (9th Cir. 2023)……………………………………………………..…..13

*Warciak v. Subway Rests., Inc.*,

949 F.3d 354 (7th Cir. 2020)………………………………………………………..14

*Williams v. Myler Disab., LLC*,

2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020)………………….……………6

*Wilson v. Better Mortg. Corp.,*

2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025)…………………..…..3, 10-12, 15

*Wilson v. Easy Spirit*,

2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026)……………………………….4

*Wilson v. Hard Eight Nutrition LLC*,

2025 U.S. Dist. LEXIS 122504 (D. Or. June 27, 2025)………………………………..20

*Wilson v. MEDVIDI Inc.*,

2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025)……………………………12, 15

*Wilson v. Skopos Fin., LLC*,

2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025)……………….……………..8, 16

<u>Statutes and Other Sources</u>

47 U.S.C. § 227(c)(3)……………………………………………………………………..1, 15

47 U.S.C. § 227(c)(3)(F)…………………………………………………...……….1

47 C.F.R. §§ 64.1200……………………………………………...……………………1

47 C.F.R. § 64.1200(e)……………………………………………………………………1, 13

47 C.F.R. § 64.2305(b)…………………………………………………………..……......18

47 C.F.R. § 64.2305(c)……………………………………………………………..……………18

47 U.S.C. § 227(i)(1)(A)………………………………………………………………………….6

47 U.S.C. § 227(c)(1)……………………………………………………………………………7-9

47 U.S.C. § 227(a)(4)……………………………………………………………………..…7-8, 10

47 U.S.C. § 227(c)(5)…………………………………………………………………...........................9

*In re Rules and Regulations Implementing the TCPA*,

18 FCC Rcd. 14014 (2003)……………………………………………….…………..1, 17, 18

*In re Targeting and Eliminating Unlawful Text Messages*,

38 F.C.C. Rcd. 12247 (2023)…………………………………………………………..1, 13

*In re: Targeting and Eliminating Unlawful Text Messages*,

88 Fed. Reg. 20800 (2023)………………………………………………………………..13

## I. PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint. *See,* Docket 27.

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to *all* residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff Cosby Siringi is one of them. So when Defendant sent Mr. Siringi telemarketing texts in violation of the FCC's rules, he brought this lawsuit to vindicate those rights and to put a stop to Defendant's unwelcome and intrusive marketing practices.

Defendant has now filed a Motion to Dismiss, and it is one that makes a big ask of this Court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin*

*Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So, Defendant therefore asks this Court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans.

This Court should decline that request. A fresh read of the statutory text confirms what courts have held for decades - that consumers listing their number on the Do Not Call List are protected from intrusive text messages, not just voice calls. Defendant asks this Court to substitute its judgment for Congress's and the FCC's largely because text messages didn't exist yet when the TCPA was passed. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

The Fifth Circuit, like every other Circuit Court of Appeals that has addressed this issue, has already treated text messages as "telephone calls" for TCPA purposes. *See, Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]"); *Hill v. Shoe Carnival, Inc.*, 2026 U.S. Dist. LEXIS 15734, at *5 (E.D. Tex. Jan. 5, 2026)(noting that "as to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision *not* to cover text messages").

Those decisions align this Circuit with the Supreme Court's framing and the prevailing national consensus that texts fall within the TCPA's ambit. This has not changed. Indeed, the number of courts that have recently undertaken in-depth analysis of the statute - and continue to find that text messages are treated as a 'call' under the TCPA - continues to grow daily, **which**

**includes a recent decision by the Chief Judge of this District**. *See e.g., Alvarez v. Fiesta Nissan, Inc.,* 2026 U.S. Dist. LEXIS 14155, *16 (S.D. Tex. Jan. 26, 2026)("both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List"); *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026)(agreeing with *Alvarez* and concluding that "the Court finds that Subsection 227(c)(5) applies to cell phone text messages"); *Newell v. Child.'s Dental Health Assocs.*, 2026 U.S. Dist. LEXIS 74360, at *23 (E.D. Pa. Apr. 6, 2026)("We agree with the FCC and many courts that have considered the question that the statutory language 'calls' includes text messages"); *Wilson v. Better Mortg. Corp.,* 2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025)("The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons"); *Esquivel v. Mona Lee, Inc.*, 2025 U.S. Dist. LEXIS 230841, at *7-8 (S.D. Cal. Nov. 24, 2025)("Given the language of the TCPA, precedent, and FCC regulatory guidance, the Court concludes that Plaintiff's allegations regarding Defendant's text messages rise to a cause of action under Section 227(c)(5)"); *Mujahid v. Newity*, 2025 U.S. Dist. LEXIS 221088, at *1-8 (N.D. Ill. Nov. 10, 2025)(a finding that "the phrase 'telephone call,' as used in § 227(c), encompasses 'text messages' " is consistent with (1) "the statute's plain language", (2) "the text of § 227 as a whole", (3) "confirmed by the purpose and context of the TCPA" and (4) "consistent with guidance from the FCC" as well as (5) consistent with the overwhelming weight of legal authority); *Mey v. Liberty Home Guard*, 2026 U.S. Dist. LEXIS 739, at *20 (N.D.W. Va. Jan. 5, 2026)("This Court agrees that a text message is a call within the ambit of the TCPA" for these same 5 reasons); *Rubin v. Staples*, 2026 U.S. Dist. LEXIS 70359, at *16-17 (D.N.J. Mar. 31, 2026)("the majority of courts also consider § 227(c)(5)'s protection against 'calls' to include text messages. Consistent with

these cases, the Court concludes that 'telephone call' can encompass text messages for purposes of § 227(c)(5) and 47 C.F.R. § 64.1200(d)"); *Wilson v. Easy Spirit*, 2026 U.S. Dist. LEXIS 69059, at *14 (D. Conn. Mar. 31, 2026)(agreeing with the reasoning of these courts that "a text message is a 'telephone call' for the purpose of the private right of action under § 227(c)(5)").

The Defendant's second challenge – that the Plaintiff does not adequately allege that he is a 'residential telephone subscriber' - fares no better, because the term covers cell phones that are used for residential purposes. *See e.g., Hunsinger v. Buyers,* 2022 U.S. Dist. LEXIS 32319, at *7-9 (N.D. Tex. Feb. 24, 2022) (denying motion to dismiss where the plaintiff alleged that the offending communications were received on a cellular phone, that was "primarily used for personal, family, and household use"); *Callier v. Nat'l United Grp., LLC*, 2021 U.S. Dist. LEXIS 223278, at *26 (W.D. Tex. Nov. 17, 2021) ("[Defendant's] claim that § 64.1200(d) does not apply to cell phones is therefore erroneous; it applies to any cell phone being used as a residential phone"). The Amended Complaint specifically alleges that the Plaintiff's cell phone was solely used for such residential purposes. *See,* Docket 22-1, ¶27-30.

For the reasons that follow, it is respectfully submitted that the Motion to Dismiss the Amended Complaint should be denied in its entirety.

## II. ARGUMENT

### A. Text Messages Are "Calls" Under the TCPA, As The Overwhelming Weight Of Authority Has Held.

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is

undisputed, qualifies as a 'call' "); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages"); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)("Reviewing this issue, we hold that a text message is a 'call' within the meaning of the TCPA"); *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119, 1123 (9th Cir. 2026)(reaffirming that even without *Chevron* deference, "a 'text message' constitutes a 'call' within the meaning of the TCPA"); *Arredondo v. Flexi Corp.*, 2017 U.S. Dist. LEXIS 220710, at *2 (S.D. Tex. Aug. 18, 2017)("text message to a cellular telephone qualifies as a 'call' for such purposes").

Defendant relies, in part, on the order in *Davis v. CVS Pharmacy, Inc.*, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025), one of a small handful of cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez*". *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id.* at 199. "Furthermore, in the most recent term, Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id.* (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1 (2020)). "The First, Second,

Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases). Moreover, as pointed out in *Newell v. Child.'s Dental Health Assocs., LLC*, 2026 U.S. Dist. LEXIS 74360, at *15 (E.D. Pa. Apr. 6, 2026), the *Davis* decision erred when it "focused on modern parlance rather than considering the broader meaning of a 'telephone call' at the time the statute was enacted in 1991", which is not how statutes are interpreted (more on this below). *See also, Wilson v. Better Mortg. Corp.,* 811 F. Supp. 3d 631, 642 (S.D.N.Y. 2025)(finding *Davis* unpersuasive for the same reason).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA

to text messages is all but conclusive and reason alone to reject Defendant's position.[1]

***a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.***

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4). That definition plainly encompasses modern text messages.

As further explained below, the word "call" in the TCPA encompasses text messages. *See*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[2] More generally, the definition of "telephone

[1] Defendant harps on the fact that Congress amended the TCPA but did not include reference to text message in these provisions. If anything that hurts Defendant's argument, because it shows that Congress didn't seem to think that this ubiquitous technology – and the harassing spam texts that are just as ubiquitous – were not already being addressed. *See e.g., Isaacs v. USHEALTH Advisors, LLC*, 2025 U.S. Dist. LEXIS 152625, at *8 (N.D. Ga. Aug. 7, 2025) ("Defendant also contends that, if Congress wanted the TCPA to cover cell phones, it should have amended the statute to do so. But, as discussed above, courts have long interpreted the TCPA to cover cell phones, meaning that Congress would have little reason to remedy a gap that, for decades, did not exist"); *Newell*, 2026 U.S. Dist. LEXIS 74360, at *17 (rejecting identical argument by TCPA defendant and concluding that "it is considerably more likely that the 2018 amendment reflects an understanding that the 'telephone call' language in subsections (b) and (c) includes texts and remains inclusive of other ways that telephone users reach out and communicate with each other").

[2] *See also,* Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see also, Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, at *13 (D. Or. July 21, 2025)("it cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry").

To be sure, as Defendant emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See, Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). That breadth reflects Congress's choice to regulate solicitations by effect (commercial encouragement) rather than by transmission modality. See 47 U.S.C. § 227(a)(4); *Hulce* 132 F.4th at 499.

***b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.***

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "telephone call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[3] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

The meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a

[3] *See also, Call*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

"telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.

Defendant argues that a text message and telephone call are today understood to be completely different things so that "the meaning of 'telephone call' cannot be stretched to encompass the entirely different process of text messaging." The problem with this argument is that it relies on contemporary parlance rather than the term's ordinary meaning *at enactment*—an approach the Supreme Court has warned against. *See*, *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). That gets statutory interpretation wrong in several important ways. First and foremost, the Supreme Court has warned that "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *Id*. Defendant, and the cases it relies on, go astray when reflexively applying *present-day* intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[4]

As one court recently explained, "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone….The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed *any* communication made using a telephone." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *11-12 (S.D.N.Y. Dec. 5, 2025)(internal citations omitted). The operative question is thus how the term 'telephone call' was understood *back in 1991*, as opposed to how it is understood *now*, which highlights the problem with Defendant's argument:

> But that improperly substitutes the present-day meaning of 'telephone call' for the ordinary public meaning of that term when § 227(c) was enacted in 1991. In the three-plus decades since then, text messaging has become ubiquitous. That

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to also refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

> technological change gave rise to new vocabulary: 'to text' is today a widely used verb, meaning 'to send a text message from one cell phone to another.' Merriam-Webster's Collegiate Dictionary 1293 (11th ed. 2020). As a result, English speakers today tend to distinguish between 'text messages' and 'telephone calls.' In other words, the public meaning of 'telephone call' was broader in 1991 than today. But that linguistic development is of no consequence here because 'every statute's meaning is fixed at the time of enactment.' *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (citation omitted). The TCPA-era definition of 'telephone call,' as captured by contemporary dictionaries, controls the statute's construction. And that term's broad definition—a communication made by telephone—**easily** encompasses text messages.

*Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *11.

For this same reason, Chief Judge Crane denied a Motion to Dismiss identical to the one pending before this Court and found that the term "telephone call" as used in the TCPA also encompassed "text messages". As Chief Judge Crane pointed out - when the underlying statute was enacted in 1991 - the dictionary definition of a "telephone call" was "to get or try to get into communication by telephone." *See, Alvarez,* 2026 U.S. Dist. LEXIS 14155, at *10, quoting Webster's Ninth New Collegiate Dictionary 197 (1990). Judge Crane explained that "text messages" clearly fall within such a "capacious" definition, and that it does not matter that *modern* day phone users would not consider a text message to be a "phone call" because "every statute's meaning is fixed at the time of enactment." *Id.,* at *9, quoting *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2266 (2024). Ultimately, Judge Crane concluded that "both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List." *Id.,* at *16. Chief Judge Crane's analysis was then quoted extensively and adopted in this Circuit last month, in *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026)(agreeing with *Alvarez* and concluding that "the Court finds that Subsection 227(c)(5) applies to cell phone text messages").

The plain language of the TCPA thus supports treating text messages as telephone calls, even without the benefit of the FCC's decades-long guidance on treating the two terms interchangeably. The "starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield. v. Chesapeake Bay Found.*, 484 U.S. 49, 56 (1987). Courts interpret statutory language in accord with the "ordinary public meaning of its terms **at the time of its enactment**." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020); *see also, Loper Bright Enters.*, 603 U.S. at 400. That is why the cases relied on by Defendant are inapposite – because they each relied on the fact that "a speaker **today** would likely not refer to a **text message** as a 'call' ", as opposed to how an English speaker in 1991 would have interpreted the term. *Wilson*, 2025 U.S. Dist. LEXIS 251694, at *21-22 (distinguishing these same cases for this very reason).

When interpreting the term 'telephone call' to mean 'to communicate with by phone' – as the Ninth Circuit, the Sixth Circuit and contemporary dictionaries define that term - it is clear that "text messages fit easily within that broad definition." *Wilson*, 2025 U.S. Dist. LEXIS 251694, at *12. "It is undisputed that text messages are communications sent by telephone. They therefore fall within the ordinary public meaning of 'telephone call' as that term was used when the TCPA was enacted." *Id.*, <u>citing</u> *Mujahid v. Newity,* 2025 U.S. Dist. LEXIS 221088, at *4 (so holding); *Wilson v. MEDVIDI Inc.*, 2025 U.S. Dist. LEXIS 198827, at *5 (N.D. Cal. Oct. 7, 2025) (same).

Moreover, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4. Instead, "in determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Id.*

The *Jones* holding cited by Defendant also disregarded the FCC's longstanding interpretation of 'call' to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[5] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Defendant identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

The statutory framework also weighs in favor of equating unsolicited text messages with spam phone calls. Statutes must be read as a whole, not as a collection of isolated provisions. *See Territory of Guam v. United States*, 593 U.S. 310, 316 (2021); *King v. Burwell*, 576 U.S. 473, 486

---

[5] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

(2015). Courts therefore interpret statutory terms "in their context and with a view to their place in the overall statutory scheme." *King*, 576 U.S. at 486.

In this context, Section 227(b) of the TCPA uses the same term as § 227(c): "telephone call." And numerous federal courts of appeals have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision *not* to cover text messages. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages"); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]"); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute"); *see also Satterfield*, 569 F.3d at 954 (deferring to FCC's reasonable interpretation of the TCPA "to hold that a text message is a 'call' "); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing).

The weight of the above authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372-73 (2d Cir. 2022) citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). Here, nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b).

To the contrary, the statute's text and context suggest that § 227(c) was intended to reach *broader* telephonic communications than § 227(b). *See, Wilson v. Better Mortg. Corp.*, 2025 U.S.

Dist. LEXIS 251694, at *17. Section 227(b) is titled "Restrictions on use of automated telephone equipment," and accordingly prohibits the use of any ATDS or 'artificial or prerecorded voice' to send spam communications. 47 U.S.C. § 227(b)(1)(A). By contrast, § 227(c) is titled "Protection of subscriber privacy rights." By title, it is thus addressed broadly to the harms experienced by *telephone subscribers*, rather than to the *forms* of technology used to inflict such harms (*e.g.*, an ATDS or prerecorded voice). And the broad sweep of § 227(c)'s title is entirely consistent with its operative text. Section 227(c) directed the FCC to conduct a rulemaking proceeding to protect subscriber privacy rights by preventing unwanted "telephone solicitations," *id.* § 227(c)(1)-(2), which another provision of the TCPA defines throughout § 227 as "telephone call[s] *or message[s]*" to encourage a commercial transaction, *id.* § 227(a)(4) (emphasis added). That prompted the FCC to create what has become the DNCR, *see id.* § 227(c)(3), and to issue regulations that prohibit "telephone solicitation[s]" to residential numbers listed on that database, *id.* § 227(c)(3)(F). Section 227(c)(5) also created a private right of action for receiving more than one "telephone call" within 12 months by the same entity in violation of the regulations prescribed under § 227(c). In sum, unlike § 227(b), which focuses on the automated equipment used in telemarketing campaigns, § 227(c) created a comprehensive regulatory scheme to combat the unwanted telemarketing—automated or not—that Congress had found to constitute an "intrusive invasion of privacy." *Mims*, 565 U.S. at 372 (quoting Pub. L. No. 102-243 § 2(5)).

The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations generally, not on any one form of such solicitations. *See, e.g.*, *Wilson v. MEDVIDI Inc.,* 2025 U.S. Dist. LEXIS 198827, at *6. Given the weight of authority that § 227(b) covers text messages despite its narrower scope as to modes of technology than § 227(c), it logically follows that § 227(c) also covers text messages. *See also,*

*Mujahid,* 2025 U.S. Dist. LEXIS 221088, at *3-7 ("The fact that the term 'call' as used in § 227(b) encompasses 'text messages,' supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages' ").

In sum, while the deference owed to the FCC's interpretations may have changed, the logic behind those interpretations has not, and is in line with the statute's plain language, statutory framework and legislative purpose. *See e.g., Harriel v. Bealls, Inc.*, 2025 U.S. Dist. LEXIS 158157, at *5 (M.D. Fla. Aug. 15, 2025) (agreeing with the FCC's interpretation of the TCPA despite the "the changing landscape concerning deference owed to agency interpretation"); *Esquivel v. Mona Lee, Inc.*, 2025 U.S. Dist. LEXIS 230841, at *7-8 (S.D. Cal. Nov. 24, 2025)(noting that "although FCC guidance is no longer binding on district courts, its regulations can still inform a district court's analysis" and concluding that "given the language of the TCPA, precedent, and FCC regulatory guidance, the Court concludes that Plaintiff's allegations regarding Defendant's text messages rise to a cause of action under Section 227(c)(5)"); *Wilson v. Skopos*, 2025 U.S. Dist. LEXIS 138638, at *9 ("the FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA" and concluding that "unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5)").

**B. Plaintiff Alleged Receipt Of The Illegal Messages On His Cell Phone, Which He Received As A Residential Telephone Subscriber.**

Defendant next argues that dismissal of the Plaintiff's Complaint is required because of the belief that calls or texts to a wireless phone number doesn't qualify as calls made to a 'residential telephone subscriber'. This is incorrect, as the Regulations and extensive caselaw make clear. Instead, the protection of § 64.1200(d) extends to cell phone numbers through § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers[.]"). Moreover, cell

phone numbers on the DNC Registry are presumed to be residential. 18 F.C.C. Rcd. 14014, ¶ 36 (noting the presumption that "wireless subscribers who ask to be put on the national do-not-call list" are 'residential subscribers'"). At this stage, this presumption is independently sufficient to satisfy Plaintiff's pleading requirement. Defendant presents nothing to the contrary. *See, e.g.*, *Hodgin v. Parker Waichman LLP,* 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015).

Even if the FCC's holdings are no longer accorded deference, a finding that the term "residential telephone subscriber" includes users of cell phones accords with the statutory text and framework, as many courts have continued to find. *See e.g., Butler v. Tex. Card House, LLC,* 2025 U.S. Dist. LEXIS 47774, at *5-6 (W.D. Tex. Mar. 17, 2025)("the Court agrees with the vast majority of courts that have determined that § 227(c) applies to cell phones when used for residential purposes"); *Salaiz v. VSC Operations LLC*, 2024 U.S. Dist. LEXIS 121927, at *12 (W.D. Tex. July 10, 2024) (finding that § 227(c) covers cell phones used for residential purposes because (1) 'it appears to represent a majority position,' (2) it aligned with the Fifth Circuit's recent rejection of a narrow reading of 'residential telephone subscribers' in a related TCPA context, (3) adheres to the FCC's well-established position that cell phones are presumptively residential for purposes of the TCPA's DNC Registry provisions, and (4) is consistent with "the TCPA's core purpose of protecting people from harassing telephone calls in their homes").

The terms "business subscriber" and "residential subscriber" are expressly defined in the same subchapter as the regulations at issue here. "[S]imilar language contained within the same section of a statute must be accorded a consistent meaning." *NUCA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 502 (1998); *see also, e.g.*, *United States v. Davies*, 139 S. Ct. 2319, 2329 (2019) (considering nearly identical language in two different statutes and writing "we normally presume that the same language in related statutes carries a consistent meaning"); *Lobbins v. United States*,

900 F.3d 799, 802 (6th Cir. 2018) ("[A]bsent good reason to do otherwise, we give the same words the same meaning throughout the same statute."); Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text", and only "a material variation in terms suggests a variation in meaning.")

The term "[b]usiness subscriber refers to a subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b). The term "[r]esidential subscriber refers to a subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(c). The regulatory definitions of these terms pre-date the creation of the DNC Registry by almost four years. *Compare* 18 F.C.C. Rcd. 14014 (June 26, 2003) (creating DNC Registry) *with* 47 C.F.R. §§ 64.2305(b) and (d) (effective date October 5, 1999). As such, determining whether a phone number is protected by the DNC Registry simply requires an examination of whether the number is subscribed to a consumer or business. Telephone numbers subscribed to consumers are protected by the DNC registry; telephone numbers subscribed to businesses are not.

Moreover, the statutory term "residential telephone subscriber" makes clear that it protects a type of *user* as opposed to a type of *technology*:

> Defendant's interpretation of a residential subscriber ignores the fact that 'residential' modifies 'subscriber,' meaning that the definition is tethered to a type of person rather than a type of technology. And although Defendant points out that Congress has occasionally used the term 'cellular telephone service' and could have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term 'residential telephone line' elsewhere in the TCPA. Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber. *See, Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 2025 U.S. App. LEXIS 17092, (11th Cir. 2025) ("When a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings").

*Isaacs v. USHEALTH Advisors,* 2025 U.S. Dist. LEXIS 152625, at *7 (N.D. Ga. Aug. 7, 2025)(concluding that users of personal cell phones are encompassed by the term 'residential

telephone subscriber'); *Loudermilk v. Maelys Cosmetics USA*, 2025 U.S. Dist. LEXIS 256097, at *7 (N.D. Ga. Dec. 10, 2025)(agreeing that "had Congress intended to limit the protections of Section 227(c) to types of telephone technologies rather than types of telephone subscribers, it would have done so by using the term 'residential telephone *line*' in this section instead"); *Rubin v. Staples, Inc.*, 2026 U.S. Dist. LEXIS 70359, at *11 (D.N.J. Mar. 31, 2026)(same, and noting that "227(c)'s focus on the telephone subscriber demonstrates that the term 'residential' is a functional term not tethered to a particular technology, focusing instead on the subscriber's privacy rights ... rather than his telephone's technological capabilities. The specific kind of telephone or communications technology, *e.g.*, a cellular telephone, is distinct from and does not identify the type or identity of the subscriber to the technology, *i.e.*, a residential subscriber").

In addition, "because the TCPA is a remedial statute, it should be liberally construed in favor of the consumer." *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018); *see also, e.g. Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020). Interpreting "residential subscriber" and "business subscriber" in line with their respective definitions protects every consumer who registers their telephone number on the DNC Registry. Limiting that protection to just wired landlines in would make no sense, considering how cell phones have replaced landline hard-wired phones for most residential users:

> on a practical level, the Court notes that Defendant's interpretation — that the TCPA's protections only apply to landline phones — is untenable in today's world. The reality is that most individuals today utilize cell phones as the primary, and sometimes only, telephone in their residence. If the TCPA were to only apply to a landline user but not a cell phone user, a tremendous number of individuals' privacy interests would remain unprotected. This interpretation would be inconsistent with the 'government interest articulated in the legislative history of the Act,' which was to broadly protect residential privacy.
>
> *Loudermilk*, 2025 U.S. Dist. LEXIS 256097, at *7-9.

The courts in this Circuit have long agreed that the term 'residential telephone subscriber' includes wireless phone numbers that are used for personal and residential purposes. Even after the Supreme Court changed the deference accorded to FCC Orders, courts across the nation have continued to reach the same result. *See, Harriel,* 2025 U.S. Dist. LEXIS 158157, at *5 (holding, after exercising independent judgment, that the FCC's interpretation of the TCPA to include cell phone users was "persuasive and accurate"); *Wilson v. Hard Eight Nutrition*, 2025 U.S. Dist. LEXIS 122504, at *14-15 (D. Or. June 27, 2025) (noting that the defendant's interpretation — that the TCPA did not protect cell phone users — "conflicts with the express aim of the TCPA").

Caselaw is fairly uniform in denying Motions to Dismiss on this basis, as long as the plaintiff alleges that the wireless number was used for residential and personal reasons, and not for business reasons. *See e.g., Ferrell v. Colourpop Cosmetics*, 2025 U.S. Dist. LEXIS 140893, at *14 (C.D. Cal. July 22, 2025)("because Plaintiff alleges that she has registered the cell phone and that it is a 'residential number,' used for 'personal purposes' and 'not associated with a business,' Plaintiff has adequately alleged that she is a residential telephone subscriber within the meaning of the TCPA"); *Sagar v. Kelly Auto. Grp.*, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov. 29, 2021)("Sagar has plausibly pleaded that he uses his cell phone for personal purposes as a residential line and that he has put it on the National Do-Not-Call Registry"); *Butler v. Tex. Card House*, 2025 U.S. Dist. LEXIS 47774, at *6-7 (W.D. Tex. Mar. 17, 2025)(denying MTD where "Plaintiff alleges that he 'uses his cellular telephone as his personal residential telephone number.' He further alleges that he registered his cellular telephone number with the DNC Registry"). That is **exactly** what the Plaintiff did in the Amended Complaint. *See,* Docket 22-1, ¶27-30.

For these reasons, Defendant's Motion should be denied in its entirety.

Dated: April 14, 2026

/s/ Yitzchak Zelman, Esq.
Counsel for Plaintiff, Cosby Siringi

**CERTIFICATE OF SERVICE**

I, Yitzchak Zelman, hereby certify that I have on this 16th day of April, 2026, filed a copy of the foregoing through the Court's CM/ECF system, which will serve an electronic copy on counsel of record identified in the Notice of Electronic Filing.

/s/ Yitzchak Zelman
Yitzchak Zelman