United States District Court
Southern District of Texas
**ENTERED**
October 14, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Cosby Siringi, individually and on behalf of all others similarly situated, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-4266 |
| | § | |
| Crust Pizza Co., | § | |
| | § | |
| *Defendant*. | § | |

**JUDGE PALERMO'S**
**REPORT AND RECOMMENDATION**

This a Telephone Consumer Protection Act ("TCPA") case. ECF No. 1.[1] Defendant Crust Pizza Co. ("Crust Pizza") moves to dismiss Plaintiff Cosby Siringi's amended complaint. ECF No. 27. Siringi responded, ECF No. 28, and Crust Pizza replied, ECF No. 29. Both parties also filed notices of supplemental authority. ECF Nos. 30, 35.

Having considered the briefing and applicable law, the Court recommends the motion be granted.

## I. BACKGROUND

Robocalls and automated text messages—the one-two punch of relentless telemarketers and the bane of beleaguered consumers nationwide. While businesses frequently deploy both nuisances in tandem, the primary issue in this case is whether

[1] The district judge referred all pretrial proceedings under 28 U.S.C. § 636. ECF No. 12.

the TCPA treats them the same legally.

The allegations here are all too familiar. Crust Pizza owns and operates "a chain of pizza restaurants throughout Texas" and sends "autodialed telemarketing text messages to clients" to promote its business. ECF No. 22-1 ¶¶ 24–25. On February 22, 2024, Siringi bought a pizza from Crust Pizza and provided his phone number "to join a loyalty points program," not realizing "that this would lead to receiving promotional messages." *Id.* ¶¶ 26, 31.

That blissful ignorance was short lived. On July 10, 2024, Siringi "received a telemarketing text message from Crust Pizza." *Id.* ¶ 33. He promptly replied "STOP" and "received a subsequent confirmation that he had been unsubscribed from further texts." *Id.*

If only it were so easy. A week later, on July 17, Siringi "received another telemarketing text message from the same number," this time "promoting a sale." *Id.* ¶ 34. Over the next two weeks, Crust Pizza peppered him with three more promotional text messages, prompting him to again text "STOP" to escape the merciless pizza marketing. *Id.* ¶¶ 35–37.

On September 9, 2025, Siringi sued Crust Pizza individually and on behalf of a putative class for violating the TCPA. ECF No. 1. In his amended complaint, he asserts claims under 47 U.S.C. § 227(b)(1)(A)(iii) and (c)(5) as well as Texas Business and Commerce Code § 305.053. ECF No. 22-1 ¶¶ 69–99.

Crust Pizza moves to dismiss the amended complaint. ECF No. 27.

## II. RULE 12(B)(6) DISMISSAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gaskin v. Univ. of Hous. Police Dep't*, No. CV H-25-1658, 2025 WL 3514356, at *3 (S.D. Tex. Dec. 8, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020)).

In determining a motion to dismiss, "'[c]ourts accept 'all well-pleaded facts as true' and 'view them in the light most favorable to the plaintiff.'" *Id.* (original alteration adopted) (quoting *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018)). At this stage, courts may only consider "(1) the facts in the complaint; (2) documents attached to the complaint; and (3) matters of which the court may take judicial notice." *Id.* (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).

## III. THE AMENDED COMPLAINT SHOULD BE DISMISSED.

Siringi alleges claims under TCPA § 227(b) and (c)(5) as well as Texas

Business and Commerce Code § 305.053. The Court discusses each in turn.

### A. Siringi's TCPA claims fail.

Siringi claims that Crust Pizza violated the TCPA by sending him promotional texts after he opted out of further messages. He asserts one claim under § 227(b)(1)(A)(iii) and another under § 227(c)(5) ECF No. 22-1 ¶¶ 69–80, 87–94. Both fail.

#### *i. Siringi fails to state a plausible claim under § 227(b)(1)(A)(iii).*

The Court begins with § 227(b)(1)(A)(iii). That section prohibits "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines "automatic telephone dialing system" to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

In *Facebook, Inc. v. Duguid*, the Supreme Court held that equipment qualifies as an automatic telephone dialing system—"autodialer" for short—only if it "use[s] a random or sequential number generator" to store or produce numbers to be called. 592 U.S. 395, 404 (2021). Equipment that does not use a random or sequential number generator is not an autodialer. *Id.* at 405.

Here, Siringi never alleges that Crust Pizza used a random or sequential

number generator to produce and call his number. Just the opposite: he voluntarily gave Crust Pizza his phone number to enroll in its rewards program, ECF No. 22-1 ¶ 26, and Crust Pizza subsequently texted him promotional messages, *id.* ¶¶ 33–37. Although Siringi asserts in conclusory fashion that Crust Pizza "used an autodialer . . . to send promotional messages," *id.* ¶ 4, he outlines no facts describing the autodialing system. A "bare allegation" that Crust Pizza used an autodialer, "without more, is insufficient to sustain a TCPA [§ 227(b)] claim." *Hunsinger v. Dynata LLC*, No. 3:22-cv-00136-G-BT, 2023 WL 2377481, at *7 (N.D. Tex. Feb. 7, 2023) (quoting *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337 M, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017)). Because Siringi fails to plead sufficient facts that, when taken as true, establish Crust Pizza used a random or sequential number generator, his § 227(b) claim should be dismissed. *See Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) (explaining that a plaintiff "must provide at least enough facts to make a plausible inference that [the defendant] used an [automatic telephone dialing system] to survive dismissal").

Moreover, Siringi abandoned his § 227(b) claim because he failed to respond to Crust Pizza's arguments on the issue. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (explaining that failure to defend claim in response to motion to dismiss "constitute[s] abandonment"). *See also Ramsey v. San Jacinto Coll. Dist.*, No. 4:23-CV-1719, 2025 WL 1261027, at *10 (S.D. Tex. Apr. 30, 2025) ("[F]ailure

to brief an argument in the district court waives that argument in that court." (quoting *JMCB, LLC v. Board of Comm. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La 2018))). For this additional reason, his § 227(b) claim should be dismissed.

***ii. Text messages are not actionable under § 227(c)(5).***

Next, the Court turns to § 227(c)(5). Crust Pizza argues that § 227(c)(5) only applies to unwanted phone calls, not text messages. ECF No. 27. Siringi disagrees, contending that it protects against both robocalls and spam texts. ECF No. 28.

Crust Pizza is correct. When interpretating statutes, courts "begin with the text." *Vetter v. Resnik*, 163 F.4th 951, 956 (5th Cir. 2026). "If the text . . . is clear and unambiguous, the inquiry ends," and courts "give[] effect to the plain language." *Id.* (cleaned up) (quoting *Matter of Durand-Day*, 134 F.4th 846, 851 (5th Cir. 2025)).

Section 227(c)(5) provides a private right of action to anyone "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [FCC's] regulations." 47 U.S.C. § 227(c)(5). It does not mention text messages, nor does the statute expressly define "call." At first blush, then, § 227(c)(5) applies only to calls, not texts, conferring a right of action to those who "received more than one *telephone call*." *Id.* (emphasis added).

To resist this straightforward reading, Siringi argues "[i]t is well established that the word 'telephone call' in the TCPA includes text messages." ECF No. 28 at 16. Relying on a Ninth Circuit opinion, he contends that "call" simply means "to

communicate or try to get into communication with a person by a telephone." *Id.* (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). But *Satterfield* is inapposite because it relied on *Chevron* deference, an unwieldy and widely criticized interpretive doctrine that the Supreme Court subsequently overturned in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024).

Moreover, as the Seventh Circuit points out in a recent instructive decision, "telephone" was understood in 1991—when Congress enacted the TCPA[2]—as "[a]n instrument for reproducing *sounds* at a distance." *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535–36 (7th Cir. 2026) (alteration in original and emphasis added) (quoting *Telephone*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991)). Thus, "telephone call" together "referred to communication via sound." *Id.* at 536. Because "[t]ext messages do not reproduce sounds," it follows "that they do not qualify" as "telephone calls." *Id.*

Statutory structure and history reinforce the Court's conclusion. Text messaging did not exist when Congress passed the TCPA: the first text was sent in 1992, about a year after enactment. ECF No. 27 at 8; ECF No. 28 at 15. That means Congress did not intentionally include text messages within the term "telephone

---

[2] Courts interpret words "consistent with their ordinary meaning . . . at the time Congress enacted the statute." *K Alain, L.L.L.P. v. Comm'r of Internal Revenue*, No. 24-60240, 2026 WL 2333930, at *2 (5th Cir. Aug. 12, 2026) (internal quotation marks omitted and ellipsis in original) (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018)).

call." *See, e.g.*, *Steidinger*, 182 F.4th at 535 ("It's undisputed that 'telephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year."); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("Text messaging was not an available technology in 1991, when the TCPA was enacted and thus 'telephone call' would not have included text messages or SMS messages.").

But even if Congress could not foresee text messaging specifically, it nonetheless understood that phone technology could evolve beyond simply reproducing sounds. That is why it defined the term "telephone solicitation" as "the initiation of a telephone call *or message* for the purpose of encouraging the purchase of" goods or services. 47 U.S.C. § 227(a)(4) (emphasis added). To that end, § 227(c)(1) and (c)(2) instruct the Federal Communications Commission ("FCC") to craft regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Similarly, § 227(c)(3) and (c)(4) discuss a national database for persons "who object to receiving telephone solicitations"—i.e., the National Do-Not-Call Registry.

This language indicates that Congress distinguished calls and messages as "different forms of communication by telephone" and drafted language broad enough to capture both when desired. *Steidinger*, 182 F.4th at 536. The fact that

§ 227(c)(5) does not use the term "message" or the more encompassing "telephone solicitation" shows that Congress intended to "provide[] a narrower remedy" to consumers, one that captures "unwanted calls[] but not unwanted telephone solicitations" more broadly. *Id.* Siringi would have the Court ignore these differences and hold that "telephone call" includes "telephone messages." But where Congress "used one term in one place, and a materially different term in another," the Court presumes it meant to "denote[] a different idea." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (quoting A. SCALIA & B. GARNER, READLING LAW 170 (2012)); *Espinoza Andres v. Noem*, 815 F. Supp. 3d 569, 574 (S.D. Tex. 2025) (explaining "a basic canon of statutory construction is that 'differences in language . . . convey differences in meaning'" (ellipsis in original) (quoting *Ysleta Del Sur Pueblo* v. *Texas*, 596 U.S. 685, 698 (2022))). Nor is the Court inclined to create surplusage by construing "calls" and "messages" to mean the same thing. *See United States v. Limon*, 159 F.4th 327, 336 (5th Cir. 2025) (explaining "the rule against surplusage, a well-established canon of statutory interpretation," is designed "to give effect, if possible, to every word Congress used" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))). Conflating these distinct terms would sabotage the carefully calibrated regulatory system Congress created.

Siringi next searches for support in § 227(c)(1)(D), where "Congress directed the FCC to assess whether it needed additional statutory authority 'to further restrict

telephone solicitations, including those *calls* exempted under subsection (a)(3).”[3] ECF No. 28 at 16 (emphasis in original) (quoting 47 U.S.C. § 227(c)(1)(D)). He argues that “§ 227(c)(1)(D)’s reference to ‘calls exempted under’ the definition of ‘telephone solicitation’” means that “call” has “the same breadth as ‘telephone solicitation.’” *Id.* at 16–17.

Siringi misses the mark. If anything, the fact that Congress intentionally used the terms “telephone solicitation” and “call” in the same sentence and so close together confirms that it was well aware the two terms encompass different modes of communication. Otherwise, Congress could have simply wrote: “to further restrict telephone solicitations, including those [] exempted under subsection (a)(3).” But it did not; it specified only exempted “*calls*,” leaving exempted “messages” untouched. *See* 47 U.S.C. § 227(a)(4). Again, the Court presumes that word choice is significant.

Finding no footing in the statutory text or structure, Siringi falls back on precedent and agency interpretation. First, he asserts that “[t]he Supreme Court, every Circuit Court, and the majority of district courts” agree that “calls” include text messages. ECF No. 28 at 11. He is mistaken.

---

[3] Section 227(c)(1)(D) suffers from a minor drafting error because Congress forgot to update the “subsection (a)(3)” cross-reference when it amended the TCPA in 2005, so it erroneously references the definition of “telephone facsimile machine” (subsection (a)(3)) when it should reference the definition of “telephone solicitation” (subsection (a)(4)). *Steidinger*, 182 F.4th at 537. Nonetheless, the parties correctly recognize and navigate the error.

For example, Siringi cites the Supreme Court's decision in *Campbell-Ewald Company v. Gomez*, 577 U.S. 153 (2016). In *Campbell-Ewald*, the Court noted that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Id.* at 156. The Court later clarified, however, that this observation was merely an assumption because neither party contested the issue. *Duguid*, 592 U.S. at 400 n.2 (citing *Campbell-Ewald* and stating that because "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," the Court would "therefore assume that it does without considering or resolving that issue"). In other words, *Campbell-Ewald* says nothing about whether calls include texts under the TCPA generally, much less under § 227(c)(5) specifically.

Siringi's reliance on *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021), fares no better. In that case, the Fifth Circuit opined that "[r]obocalls and robotexts are nuisances" and that "Congress banned them in the" TCPA. *Id.* at 688. But like *Campbell-Ewald*, neither party contested whether "calls" included texts, so the court had no reason to decide the issue. *Cranor* is therefore unhelpful.

Siringi also points to several district-court cases holding that § 227(c)(5) applies to texts. ECF No. 28 at 10. As one example, the court in *Alvarez v. Fiesta Nissan* observed that, like phones from 1991, modern phones can "produc[e] sounds at a distance" but with the added capacity to send and receive text messages.

No. 7:25-CV-00343, 2026 WL 202930, at *5 (S.D. Tex. Jan. 26, 2026). Since texts are designed to communicate with someone else via phone, the court concluded that "text message[s] fall[] reasonably within the" term "telephone call." *Id.*

*Alvarez* is unpersuasive for at least two reasons. First, while the court recognized that "telephone solicitation" was "broad," it failed to account for the fact that § 227(c)(5) does not use the term "solicitation"—it uses "call." *Id.* The *Alvarez* court observed that Congress later amended subsections (c)(1) and (c)(2) to include the term "solicitation," finding it plausible "that Congress believed its definition of 'telephone solicitation' in" subsections (c)(1) and (c)(2), "combined with the FCC's interpretation, was enough to broaden the subsection's [i.e., (c)(5)'s] cause of action to include *all* telephone solicitations." *Id.* (emphasis in original). But that argument cuts both ways. It is just as likely that Congress intentionally directed the FCC to regulate solicitations more broadly under subsections (c)(1) and (c)(2) while providing consumers "a narrower remedy" that captures only "unwanted calls" under subsection (c)(5). *Steidinger*, 182 F.4th at 536.

Second, under *Alvarez*'s reasoning, any communication from a modern phone—not just SMS text messages but also app messages, emails, tweets, pings, push notifications, posts, alerts, etc.—would qualify as a "telephone call." Where the defendant's interpretation in *Alvarez* was too narrow because it would have excluded calls "with any modern features," *Alvarez*, 2026 WL 202930, at *5

(emphasis omitted), the *Alvarez* court's interpretation was too expansive because it would ensnare every form of communication available on modern phones. The better reading is that "telephone call" encompasses phone communications produced via sound.

Lacking persuasive precedent, Siringi appeals to the FCC's statutory interpretation. "[T]he FCC has recognized since 2003 that when the statute says 'call,' it means not only traditional voice calls bus also modern text messages." ECF No. 28 at 16 (citing 18 F.C.C. Rcd. At 14115 ¶ 165). The agency has also "extend[ed] National Do-Not-Call Registry protections to text messages." *Steidinger*, 182 F.4th at 538; *see* 47 C.F.R. § 64.1200(e). But the FCC implemented "the National Do-Not-Call Registry . . . pursuant to § 227(c)(3), which refers to 'telephone solicitations,'" so it does not inform the Court's "understanding of § 227(c)(5), which refers only to telephone calls." *Steidinger*, 182 F.4th at 538. Even if it did, though, the FCC's interpretation does not control. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). Courts "afford[] appropriate respect to [an] agency's interpretation" but ultimately interpret statutes "under ordinary principles" of construction. *Id.* Thus, to the extent that the FCC interprets § 227(c)(5) to apply to texts, the Court declines to follow the agency's interpretation.

Siringi also theorizes that Congress adopted the FCC's interpretation when it

amended the TCPA and added express references to text messages in § 227(e) and (i). ECF No. 28 at 13. But if Congress knew that the FCC extended protections to text messages and intended to adopt that interpretation silently by amending the TCPA without changes to § 227(c), it would not have added explicit references to text messages anywhere in the statute. Yet it did, clarifying which portions of § 227 covered text messages—and § 227(c)(5) was not one of them. Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091–92 (2018) (amending § 227(e) to cover text messages and defining "text message" for the purposes of that subsection). If anything, Congress' amendments undermine, not support, Siringi's position because they imply that Congress deliberately declined to expand § 227(c)(5) to text messages. Regardless, when "Congress has not comprehensively revised a statutory scheme but has made only isolated amendments . . . it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval." *Steidinger*, 182 F.4th at 539 (ellipsis in original) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001)). At best, Congress' failure to amend § 227(c)(5) is ambiguous.

With nowhere else to turn, Siringi invokes the TCPA's remedial nature, cautioning that this ruling could "upend[] protections for potentially hundreds of millions of Americans." ECF No. 28 at 9. But just because Congress had general

concerns about intrusive telemarketing practices does not "necessarily mean that it adopted a broad definition of telephone call." *Steidinger*, 182 F.4th at 540. In fact, Congress enacted the TCPA in large part to prevent telemarketing calls from "seiz[ing] telephone lines needed for emergency or medical assistance." *Id.* (citing Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394). "Spam text messages do[ not] pose this risk," so it is not surprising that "§ 227(c)(5)'s private right of action would cover telephone calls but not messages." *Id.*

In any event, even if it would be wise to include text messages under § 227(c)(5), Siringi's policy concerns "are appropriate for Congress's consideration," not the Court's. *Barr v. Sec. & Exch. Comm'n*, 114 F.4th 441, 452 (5th Cir. 2024), *cert. denied*, 146 S. Ct. 110 (2025). "Laws are the product of compromise, and no law pursues its purposes at all costs." *Id.* (internal quotation marks omitted) (quoting *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023)). Ultimately, "a statute's purpose may not override its plain language." *Id.* (quoting *United States v. Rainey*, 757 F.3d 234, 245 (5th Cir. 2014)). While unwanted text messages are undoubtedly nuisances, they do not fit within § 227(c)(5)'s private right of action. "Instead, spam messages may be curbed through agency action" under the "other provisions of § 227, which" remain

undisturbed. *Steidinger*, 182 F.4th at 540.[4]

**B. Siringi's State Law Claims Fail.**

Under Texas Business and Commerce Code § 305.053, a "person who receives a communication that violates [the TCPA] . . . may bring an action in this state against the person who originates the communication." TEX. BUS. & COM. CODE § 305.053(a). Importantly, § 305.053 "proscribes only that conduct which is also prohibited by the TCPA." *Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at *3 (S.D. Tex. July 9, 2020) (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)). No violation of the TCPA means no violation of § 305.053. *Id.*; *see also Horton v. SunPath, Ltd.*, No. 3:23-CV-631-E-BN, 2025 WL 438893, at *7 (N.D. Tex. Jan. 22, 2025), *adopted*, No. 3:23-CV-631-E, 2025 WL 438562 (N.D. Tex. Feb. 7, 2025).

Here, Siringi fails to adequately allege that Crust Pizza violated the TCPA. Accordingly, his claims under the Texas Business and Commerce Code should be dismissed as well.

## IV. CONCLUSION

Congress passed the TCPA to establish a regulatory scheme to address intrusive telemarketing practices. As part of that scheme, Congress allowed consumers to sue for repeated unwanted calls under § 227(c)(5). It did not, however,

---

[4] Because the Court finds that § 227(c)(5) does not apply to text messages, it need not reach the issue of whether Siringi is a "residential telephone subscriber" under the TCPA.

extend that same remedy to unwanted "messages" more generally. Regardless of whether that decision was the result of assiduous deliberation, legislative compromise, or mundane oversight, "the wisdom of Congress's policy choice is beyond [the] judicial ken." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1493 (2026).

Accordingly, the Court **RECOMMENDS** Crust Pizza's motion to dismiss, ECF No. 27, be **GRANTED** and Siringi's claims be dismissed with prejudice.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

**IT IS SO ORDERED.**

Signed at Houston, Texas, on October 14, 2026.

**Dena Hanovice Palermo**
**United States Magistrate Judge**